IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>EKS WALL SYSTEMS, INC., CENTERPOINTE CONSTRUCTION CORP., and McPEAKE MANAGEMENT, LLC,<br><br>Defendants. | Civil Action No. 1:20-cv-18<br><br>**Complaint for Declaratory Judgment** |

COME NOW Plaintiffs, Ohio Security Insurance Company ("Ohio Security") and The Ohio Casualty Insurance Company ("Ohio Casualty"), by and through their undersigned counsel, pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. §§ 2201-2202, and N.C. Gen. Stat. § 1-253, *et seq.*, and hereby file this Complaint for Declaratory Judgment, seeking a declaratory judgment against Defendants, EKS Wall Systems, Inc. ("EKS"), Centerpointe Construction Corp. ("Centerpointe"), and McPeake Management, LLC ("McPeake"), to determine and declare the rights and duties of the parties (if any) under certain policies of insurance issued to EKS by Ohio Security and Ohio Casualty.

## NATURE OF THE CASE

1. This action seeks a declaratory judgment that commercial general liability insurance policies issued by Ohio Security to Defendant EKS (Policy No. BKS (15) 56 32 06 47, with effective dates of 09/15/2014 – 09/15/2015, Policy No. BKS (16) 56 32 06 47, with effective dates of 09/15/2015 – 09/15/2016, and Policy No. BKS (17) 56 32 06 47, with effective dates of 09/15/2016

1

– 09/15/2017 (the "Ohio Security Policies")), and an umbrella liability insurance policy issued by Ohio Casualty to EKS (Policy No. USO (15) 56 32 06 47 with effective dates of 09/15/2014 – 09/15/2015 (the "Ohio Casualty Policy")), do not afford coverage for alleged property damage to a Town Place Suites by Marriott Hotel in Aberdeen, North Carolina (the "Hotel").

2. The Ohio Security Policies and the Ohio Casualty Policy do not provide coverage for the alleged property damage because the Ohio Security Policies and the Ohio Casualty Policy exclude coverage for "property damage" any part of which is caused by, or allegedly caused by, the installation of an Exterior Insulation and Finish Systems ("EIFS"), in any form or any substance containing EIFS, either alone or in combination with other substances or factors, whether included in a product or otherwise.

## PARTIES

3. Ohio Security is a company organized under the laws of the State of New Hampshire with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts.

4. Ohio Casualty is a company organized under the laws of the State of New Hampshire with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts.

5. EKS is a company organized under the laws of the State of North Carolina, with its principal place of business in Raleigh, North Carolina.

6. Centerpointe is a company organized under the laws of the State of North Carolina, with its principal place of business located in Garner, North Carolina.

7. McPeake is a company organized under the laws of the State of North Carolina, with its principal place of business located in Southern Pines, North Carolina.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

9. This Court has personal jurisdiction over Defendants. The construction of the Hotel giving rise to the claims occurred in Moore County, North Carolina, and the Ohio Security Policies and the Ohio Casualty Policy were issued to EKS in North Carolina and are governed by North Carolina law.

10. Venue in this district is proper under 28 U.S.C. §§ 121(9) and 1391(b)(2), because the events giving rise to the claims occurred within this district.

## FACTUAL ALLEGATIONS

**A.** **The Construction Of The Hotel And Subsequent Underlying Litigation.**

11. This declaratory judgment action arises from the construction of the Hotel in Moore County, North Carolina.

12. McPeake is the Plaintiff in a lawsuit pending in the Superior Court for Moore County, North Carolina and styled *McPeake Management, LLC v. Centerpointe Construction Corp.*, Case No. 19 CVS 1047 (the "Underlying Litigation").

13. According to the allegations of the Complaint filed in the Underlying Litigation:

    (a) McPeake is in the business of managing and operating hotels, primarily in Moore County, North Carolina;

    (b) McPeake entered into a contract with Centerpointe in February 2015 for the construction of the Hotel;

    (c) The design plans and specifications for the Hotel called for an exterior cladding of Outsulation Plus MC, a Dryvit System, Inc. manufactured complete EIFS system; and

    (d) Following the completion of the construction of the Hotel, the Hotel experienced property damage from water leaks and water intrusion resulting from improper installation of caulking around the windows of the Hotel.

3

The Complaint in the Underlying Litigation alleges claims against Centerpointe for Breach of Contract, Negligence, Breach of Implied Warranty of Habitability and Good Workmanship, and Breach of Express Warranty. A true and correct copy of the Complaint in the Underlying Action is attached hereto as **Exhibit A**.

14. In the Underlying Litigation, Centerpointe has filed a Third-Party Complaint against EKS. According to the allegations of the Third-Party Complaint:

   (a) On or about May 30, 2015, Centerpointe entered into a Subcontract Agreement with EKS "to supply labor, material, taxes, insurance, equipment, supervision, daily clean up, and shop drawings to install a complete drainable EIFS system as per the design plans, specifications and any flashing required by EIFS material manufacturer." (the "Subcontract");

   (b) Centerpointe retained an engineer to inspect and evaluate the cause and origin of the water intrusion to the Hotel, which determined that the cause of the intrusion was improper installation of caulking around the windows; and

   (c) "Upon information and belief, EKS hired a second-tier subcontractor to perform EKS's obligations under the Subcontract, including but not limited to the installation of windows for the Hotel, and at lease part of the damages at issue in this action were evidently caused by EKS's subcontractor."

15. The Third-Party Complaint alleges claims against EKS for Breach of Contract, Negligence, and Contractual Indemnity. A true and correct copy of the Third-Party Complaint is attached hereto as **Exhibit B**.

16. By letter dated January 8, 2020, Ohio Security and Ohio Casualty denied coverage existed for EKS under the Ohio Security Policies and the Ohio Casualty Policy in connection with the Underlying Action, but agreed to provide a defense to EKS, subject to a full and complete

4

reservation of rights. A true and correct copy of the January 8, 2020 correspondence to EKS is attached hereto as **Exhibit C**.

17. By letter dated January 8, 2020, Ohio Security and Ohio Casualty denied coverage existed for Centerpointe as an additional insured under the Ohio Security Policies and the Ohio Casualty Policy in connection with the Underlying Litigation. A true and correct copy of the January 8, 2020 correspondence to counsel for Centerpointe is attached hereto as **Exhibit D**.

**B.**     **The Terms And Conditions Of The Insurance Policies.**

18. The Ohio Security Policies, subject to their terms, conditions, limitations, and exclusions, provide primary liability coverage for sums that EKS becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence" as defined by the Ohio Security Policies, and that occurs during the coverage period of the Ohio Security Policies. True and correct copies of the Ohio Security Policies are attached hereto as **Exhibits E, F and G.**

19. The Ohio Casualty Policy, subject to its terms, conditions, limitations, and exclusions, provides umbrella liability coverage for sums that EKS becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence" as defined by the Ohio Casualty Policy, and that occurs during the coverage period of the Ohio Casualty Policy. A true and correct copy of the Ohio Casualty Policy is attached hereto as **Exhibit H**.

20. However, the Ohio Security Policies and the Ohio Casualty Policy exclude coverage for "property damage" arising out of, or caused by, the installation of an EIFS system.

21. Specifically, the EIFS Exclusion set forth in Endorsement CG 21 86 12 04 in the Ohio Security Policies provides as follows:

**EXCLUSION - EXTERIOR INSULATION
AND FINISH SYSTEMS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

5

A. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:
  1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or
  2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

B. The following definition is added to the **Definitions** Section:
  "Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:
  1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;
  2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;
  3. A reinforced or unreinforced base coat;
  4. A finish coat providing surface texture to which color may be added; and
  5. Any flashing, caulking or sealant used with the system for any purpose.

**Exhibit E, F and G**, Endorsement CG 21 86 12 04.

22. The EIFS Exclusion set forth on Endorsement CU 64 00 12 04 of the Ohio Casualty Policy provides:

### EXTERIOR INSULATION AND FINISH SYSTEM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE PART

A. The following exclusion is added to **SECTION IV. - EXCLUSIONS:**

This insurance does not apply to:

"Bodily injury," "property damage," "personal injury," "advertising injury" or "personal or advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of any "exterior insulation and finish system," or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such system; or

2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system," or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B** For the purposes of this exclusion, the following definition is added to **SECTION V. DEFINITIONS:**

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3. A reinforced or unreinforced base coat;

4. A finish coat providing surface texture to which color may be added; and

5. Any flashing, caulking or sealant used with the system for any purpose.

This endorsement does not change any other provision of the policy.

**Exhibit H,** Endorsement CU 64 00 12 04.

### C. The Language Of The Ohio Security Policies And The Ohio Casualty Policy Excludes Coverage For Claims Arising Out Of The Underlying Litigation.

23.     The EIFS exclusions in the Ohio Security Policies and the Ohio Casualty Policy negate coverage for EKS in connection with the work performed by EKS on the Hotel.

24.     As alleged in the Third-Party Complaint filed by Centerpointe in the Underlying Litigation, the Subcontract between Centerpointe and EKS required EKS to supply labor, material, taxes, insurance, equipment, supervision, daily clean up, and shop drawings for the installation of a complete drainable EIFS system on the Hotel, as per the design plans

7

specifications, and any flashing required by EIFS material manufacturer. A true and correct copy of the Subcontract is attached hereto as **Exhibit I**.

25. The scope of EKS's work on the Hotel did not include the installation of windows on the Hotel.

26. EKS did not install windows on the Hotel, and EKS did not subcontract with any lower-tier subcontractor to install windows on the Hotel.

27. The scope of EKS's work on the Hotel was limited to the installation of the EIFS system, and flashing, caulking, and sealants used in connection with the installation of the EIFS system.

28. To the extent there was "property damage" to the Hotel resulting from the improper installation of caulking by EKS in connection with EKS's installation of the EIFS system, coverage for any such "property damage" would be completely excluded by the EIFS exclusions in the Ohio Security Policies and the Ohio Casualty Policies.

## COUNT ONE

## DECLARATORY JUDGMENT (DUTY TO DEFEND) AGAINST EKS

29. Ohio Security and Ohio Casualty incorporate by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

30. There is now a real and substantial controversy between parties, having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

31. Based on the allegations of the Third-Party Complaint in the Underlying Litigation that EKS hired a subcontractor to install windows on the Hotel, and that installation of windows

8

was part of EKS's scope of work on the Hotel, Ohio Security is providing a defense to EKS subject to a full reservation of Ohio Security's rights.

32. The allegations of the Third-Party Complaint that EKS installed the windows on the Hotel, or hired a subcontractor to install windows on the Hotel, are groundless and false.

33. Contrary to the allegations of the Third-Party Complaint, the scope of EKS's work on the Hotel was limited to the installation of the EIFS system, and did not include the installation of windows on the Hotel. The written subcontract between Centerpointe and EKS was limited to the installation of the EIFS system on the Hotel, and flashing, caulking, and sealants used in connection with the installation of the EIFS system.

34. To the extent there was "property damage" to the Hotel resulting from the improper installation of the EIFS system, or improper installation of any flashing or caulking by EKS in connection with EKS's installation of the EIFS system, coverage for such property damage would be completely excluded by the EIFS exclusions in the Ohio Security Policies.

35. Ohio Security seeks a declaratory judgment from this Court that it no longer has a duty to defend EKS against the Third-Party Complaint in the Underlying Litigation because any alleged "property damage" to the Hotel resulting from the installation of the EIFS system, is completely excluded from coverage under the Ohio Security Policies.

## COUNT TWO

## DECLARATORY JUDGMENT (DUTY TO INDEMNIFY) AGAINST EKS

36. Ohio Security and Ohio Casualty incorporate by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

37. There is now a real and substantial controversy between parties, having adverse legal interests of sufficient immediacy and reality, to warrant the issuance of a declaratory judgment.

38. EKS is seeking, from Ohio Security under the Ohio Security Policies and from Ohio Casualty under the Ohio Casualty Policy, indemnification against the claims alleged in the Underlying Litigation.

39. McPeake has commenced the Underlying Litigation, involving substantial claims for property damages against Centerpointe, and Centerpointe has filed its Third-Party Complaint against EKS, for which all parties in the Underlying Litigation will be seeking recovery from insurance policies affording coverage to EKS, if any.

40. McPeake and Centerpointe are named in this declaratory judgment action, so they are on notice of the Ohio Security and Ohio Casualty coverage denial, and will be bound by the final declaratory judgment entered by this Court.

41. Ohio Security and Ohio Casualty are entitled to a judicial determination and declaratory judgment that Ohio Security and Ohio Casualty are not required to provide coverage, under the Ohio Security Policies and the Ohio Casualty Policy, to EKS, Centerpointe, or McPeake, and that the Ohio Security Policies and the Ohio Casualty Policy provide no coverage to them for the alleged property damage to the Hotel.

42. Therefore, Ohio Security and Ohio Casualty seek a declaratory judgment from this Court that the Ohio Security Policies and the Ohio Casualty Policy do not provide coverage for any alleged "property damage" to the Hotel because the scope of EKS's work on the Hotel was limited to the installation of the EIFS system, and any "property damage" resulting from the

10

Case 1:20-cv-00018-WO-LPA   Document 1   Filed 01/08/20   Page 10 of 14

installation of an EIFS system is specifically excluded by the EIFS exclusions in the Ohio Security Policies and the Ohio Casualty Policy.

43. Ohio Security and Ohio Casualty, therefore, seek and are entitled to, a judicial declaration that they have no duty to indemnify EKS, Centerpointe or McPeake for any liability, loss, judgment, settlement, or other damages resulting from the Underlying Litigation.

44. The issuance of declaratory relief by this Court will terminate some or all of the existing controversies between the parties.

## COUNT THREE

## DECLARATORY JUDGMENT (DUTY TO DEFEND) AGAINST CENTERPOINTE

45. Ohio Security and Ohio Casualty incorporate by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

46. There is now a real and substantial controversy between parties, having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

47. Based on the allegations of the Complaint in the Underlying Litigation that EKS hired a subcontractor to install windows on the Hotel, and that installation of windows was part of EKS's scope of work on the Hotel, Centerpointe seeks a defense from Ohio Security as an additional insured.

48. The allegations in the Underlying Litigation that EKS installed the windows on the Hotel, or hired a subcontractor to install windows on the Hotel, are groundless and false.

49. Contrary to the allegations in the Underlying Litigation, the scope of EKS's work on the Hotel was limited to the installation of the EIFS system, and did not include the installation of windows on the Hotel. The written subcontract between Centerpointe and EKS was limited to

11

the installation of the EIFS system on the Hotel, and flashing, caulking, and sealants used in connection with the installation of the EIFS system.

50. To the extent there was "property damage" to the Hotel resulting from the improper installation of the EIFS system, or improper installation of any flashing or caulking by EKS in connection with EKS's installation of the EIFS system, coverage for such property damage would be completely excluded by the EIFS exclusions in the Ohio Security Policies, and Centerpointe would not be entitled to any coverage as an additional insured.

51. Ohio Security seeks a declaratory judgment from this Court that it has no duty to defend Centerpointe in the Underlying Litigation because any alleged "property damage" to the Hotel resulting from the installation of the EIFS system, is completely excluded from coverage under the Ohio Security Policies.

**COUNT TWO**

**DECLARATORY JUDGMENT (DUTY TO INDEMNIFY) AGAINST CENTERPOINTE**

52. Ohio Security and Ohio Casualty incorporate by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

53. There is now a real and substantial controversy between parties, having adverse legal interests of sufficient immediacy and reality, to warrant the issuance of a declaratory judgment.

54. Centerpointe is seeking, from Ohio Security under the Ohio Security Policies and from Ohio Casualty under the Ohio Casualty Policy, indemnification against the claims alleged in the Underlying Litigation.

55. McPeake has commenced the Underlying Litigation, involving substantial claims for property damages against Centerpointe, and Centerpointe has filed its Third-Party Complaint

against EKS, for which all parties in the Underlying Litigation will be seeking recovery from insurance policies affording coverage to EKS, if any.

56. McPeake and EKS are named in this declaratory judgment action, so they are on notice of the Ohio Security and Ohio Casualty coverage denial, and will be bound by the final declaratory judgment entered by this Court.

57. Ohio Security and Ohio Casualty are entitled to a judicial determination and declaratory judgment that Ohio Security and Ohio Casualty are not required to provide coverage, under the Ohio Security Policies and the Ohio Casualty Policy, to EKS, Centerpointe, or McPeake, and that the Ohio Security Policies and the Ohio Casualty Policy provide no coverage to them for the alleged property damage to the Hotel.

58. Therefore, Ohio Security and Ohio Casualty seek a declaratory judgment from this Court that the Ohio Security Policies and the Ohio Casualty Policy do not provide coverage for any alleged "property damage" to the Hotel because the scope of EKS's work on the Hotel was limited to the installation of the EIFS system, and any "property damage" resulting from the installation of an EIFS system is specifically excluded by the EIFS exclusions in the Ohio Security Policies and the Ohio Casualty Policy.

59. Ohio Security and Ohio Casualty, therefore, seek and are entitled to, a judicial declaration that they have no duty to indemnify Centerpointe, EKS or McPeake for any liability, loss, judgment, settlement, or other damages resulting from the Underlying Litigation.

60. The issuance of declaratory relief by this Court will terminate some or all of the existing controversies between the parties.

WHEREFORE, Ohio Security and Ohio Casualty pray that the Court enter a declaratory judgment, granting the following declaratory relief:

a. Entering a declaratory judgment that Ohio Security no longer has a duty to defend EKS in connection with the Third-Party Complaint filed by Centerpointe in the Underlying Litigation;

b. Entering a declaratory judgment that Ohio Security has no duty to defend Centerpointe as an additional insured for any claims alleged against Centerpointe in the Underlying Litigation;

c. Entering a declaratory judgment that the Ohio Security Policies and the Ohio Casualty Policy do not afford any indemnity to EKS, Centerpointe, or McPeake for any of the claims alleged against them in the Underlying Litigation; and

d. Granting any such other and further relief as equity may require and the Court deems just and proper.

Respectfully submitted, this 8th day of January, 2020.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ Christopher J. Blake
Christopher J. Blake
N.C. State Bar No. 16433
chris.blake@nelsonmullins.com
Leslie Lane Mize
N.C. State Bar No. 32790
leslie.mize@nelsonmullins.com
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Phone: (919) 329-3800
Fax: (919) 329-3799

*Attorneys for Ohio Security Insurance Company and Ohio Casualty Insurance Company*